IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

LORETTA MAULDIN,                    )
                                   )
              Plaintiff,            )
                                   )
v.                                 )
                                   )      Case No. 6:19-cv-00437-JAR
CHRISTINE WORMUTH,                 )
SECETARY, DEPARTMENT               )
OF THE ARMY,                       )
                                   )
              Defendant.           )

**OPINION AND ORDER**

This matter comes before the court on the Motion for Summary Judgment
[Doc. 73] of Defendant Christine Wormuth, Secretary of the U.S. Department of
the Army.

This is an employment discrimination case. Plaintiff Loretta Mauldin
initiated this action against the Department of the Army on December 30, 2019,
asserting claims of retaliation and discrimination on the basis of age under the
Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq*,
and discrimination on the basis of gender under Title VII of the Civil Rights Act
of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.* [Doc. 23]. Plaintiff claims that,
because the Army promoted a younger male rather than her, she lost past and
future wages and benefits, suffered "dignitary harm/emotional distress," and is
entitled to liquidated and punitive damages, equitable relief, interest, costs, and
attorneys' fees. [Doc. 23, pp. 8-9].

Defendant now seeks summary judgment on all of Plaintiff's claims,
asserting: (1) Plaintiff failed to exhaust her administrative remedies with respect

1

to her ADEA retaliation claim; even if she had exhausted all remedies, Plaintiff has failed to establish a prima facie case of ADEA retaliation; and (2) Plaintiff has failed to establish prima facie cases of either ADEA age discrimination or Title VII gender discrimination; even if she had established a prima facie case of either claim, Defendant has presented evidence of a legitimate nondiscriminatory reason for not promoting Plaintiff, which she has failed to rebut.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   The Parties' Factual Contentions

Before stating the uncontroverted facts of this case, the court must address the parties' contentions regarding admissibility of certain evidence. First, Plaintiff argues the court should disregard two of Defendant's declarations because they were generated by interested parties. Plaintiff further contends that her testimony in the "EEO Counselor's Report" constitutes inadmissible hearsay. Finally, Defendant contends that Plaintiff's most recent declaration constitutes a "sham affidavit." The court will address each evidentiary argument in turn.

#### 1.   *Defendant's Declarations*

First, Plaintiff argues two of Defendant's declarations are inadmissible under Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133 (2000). There, the Supreme Court declared that when ruling on a motion for judgment as a matter of law, "the court should review the record as a whole [but] must disregard all evidence favorable to the moving party that the jury is not required to believe." Id. at 151. Thus, "the court should give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is

uncontradicted and unimpeached, at least to the extent that the evidence comes from disinterested witnesses." Id. (further citation and quotations omitted). The Tenth Circuit has applied this standard to motions for summary judgment without analysis. See Smothers v. Solvay Chems., Inc., 740 F.3d 530, 538 (10th Cir. 2014). At least one Tenth Circuit case, however, has clarified that the rule only applies to "a matter [the moving party] must prove on the strength of its own evidence." Jackson v. Loftis, 189 F. App'x 775, 778 (10th Cir. 2006).

Defendant correctly contends that Plaintiff bears the burden of either showing direct evidence of discrimination or establishing her prima facie cases under the familiar burden-shifting framework articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Even so, this argument implies a restrictive reading of Reeves, one potentially fatal to an employer's motion for summary judgment.[1] For example, employers bear the burden of production at the second McDonnell Douglas step to articulate a legitimate, nondiscriminatory reason for the challenged employment action. See Lopez-Hernandez 64 F.4th at 30-31. Defendant-employers generally rely on testimony of interested witnesses to meet this burden. If courts were precluded from considering such testimony, many (if not most) employers would be unable to satisfy the second McDonnell Douglas step. See id. The majority of circuit courts adhere to this reasoning, concluding

---

[1] See e.g., Lopez-Hernandez v. Terumo Puerto Rico, LLC, 64 F.4th 22, 30-31 (1st Cir. 2023) (holding that a court may consider uncontradicted testimony from interested witnesses because the opposite conclusion is illogical and would undermine an employer's ability to ever obtain summary judgment).

that, under *Reeves*, courts ruling on summary judgment motions may still consider uncontradicted testimony from interested witnesses.[2]

As noted, the Tenth Circuit has not directly analyzed this issue. But given the clear weight of authority and logic of their reasoning, the Tenth Circuit would very likely arrive at a conclusion similar to its sister circuits. Accordingly, the court holds that it may consider Defendant's declarations insofar as they are uncontradicted by other evidence.

### 2.   *Plaintiff's Hearsay Objection*

Second, Plaintiff objects to her EEO Counselor's Report as inadmissible hearsay because "Rule 56 precludes the use of inadmissible hearsay testimony in depositions submitted in support of, or in opposition to, summary judgment." Starr v. Pearle Vision, Inc., 54 F.3d 1548, 1555 (10th Cir. 1995). By definition, hearsay is an out-of-court statement offered in evidence to prove the truth of the matter asserted. Fed. R. Evid. 801(c). The "matter asserted" in the Report is that Defendant unlawfully discriminated and retaliated against Plaintiff based on her gender and age. Rather than being offered to prove the truth of such matters, Defendant offers the Report as evidence to support her affirmative defense of failure to exhaust administrative remedies. In short, Defendant offers the Report to prove that Plaintiff failed to timely file her claims with the Army's EEO office.

---

[2] *See* Lopez-Hernandez, 64 F.4th at 30-31; *accord* Lauren W. ex rel. Jean W. v. DeFalminis, 480 F.3d 259, 272-72 (3d Cir. 2007); Luh v. J.M. Huber Corp., 211 F. App'x 143, 146 (4th Cir. 2006); Stratienko v. Cordis Corp., 429 F.3d 592, 597-98 (6th Cir. 2005); Sandstad v. CB Richard Ellis, Inc., 309 F.3d 893, 898 (5th Cir. 2002); Traylor v. Brown, 295 F.3d 783, 790-91 (7th Cir. 2022); Kidd v. Mando Am. Corp., 731 F.3d 1196, 1205 n.14 (11th Cir. 2013).

The court, therefore, holds that it may consider the EEO Counselor's Report to determine whether Plaintiff failed to exhaust her administrative remedies.

### 3.   *Plaintiff's Declaration*

Finally, Defendant objects to Plaintiff's 2023 affidavit submitted in support of her response to the motion for summary judgment, characterizing it as a "sham affidavit." Tenth Circuit case law makes clear that "an affidavit may not be disregarded [merely] because it conflicts with the affiant's prior sworn statements." Raltson v. Smith & Nephew Richards, Inc., 275 F.3d 965, 973 (10th Cir. 2001) (further citations and quotations omitted). However, affidavits that only create a "sham issue of fact" are improper for a court's consideration on summary judgment. *See* Sinclair Wyo. Ref. Co. v. A & B Builders, Ltd., 989 F.3d 747, 784 (10th Cir. 2021) (*citing* Burns v. Bd. Of Cnty. Comm'rs of Jackson Cnty., 330 F.3d 1275, 1281-82 (10th Cir. 2003)). The Tenth Circuit has articulated the following three-factor test to determine when conflicting affidavits create a sham issue of fact:

> (1) whether the affiant was cross-examined during his earlier testimony, (2) whether the affiant had access to the pertinent evidence at the time of his earlier testimony, and (3) whether the earlier testimony reflects confusion which the affidavit attempts to explain.

Id. Defendant identifies one factual statement in Plaintiff's 2023 affidavit that she claims contradicts Plaintiff's affidavit testimony in 2018 – namely, that Buckner approached Plaintiff to discuss the witness statement she gave to the Army's EEO office in support of an age discrimination complaint filed by her co-worker, Billy Cloud. *See* [Doc. 81-18, p. 1, ¶ 7]. In contrast, Plaintiff stated in

her 2018 affidavit that Buckner never discussed said witness statement with her directly. *See* [Doc. 81-3, p. 4, Q36].

The above-enumerated factors favor a finding that Plaintiff's 2023 affidavit merely creates a sham factual issue. First, Plaintiff was subjected to cross-examination on the contents of the 2018 affidavit during her 2021 deposition. Second, because the statements in both affidavits were based on Plaintiff's memory, she had access to that "pertinent evidence" at the time of her 2018 affidavit. Finally, Plaintiff's testimony in her 2018 affidavit does not reflect confusion that her 2023 affidavit purports to resolve. Rather, Plaintiff adds a detailed fact which could have easily been shared in 2018, and this fact directly contradicts her prior testimony. Thus, where contradictory, the court shall rely on Plaintiff's 2018 affidavit instead of her 2023 affidavit.

### B.   Uncontroverted Facts

The following facts are undisputed for purposes of summary judgment. Plaintiff Loretta Mauldin, a female born in 1958, was over 40 years of age at all times material to this litigation. [Doc. 73, p. 8, ¶ 7; Doc. 81, p. 10, ¶ PF1]. The Army hired Plaintiff in 1991 to serve at the McAlester Army Ammunition Plant ("MCAAP") located in McAlester, Oklahoma. [Doc. 73, p. 8, ¶ 6; Doc. 81-3, p. 2, Q8]. Beginning in 2003, Plaintiff served in the position of WS-6502-06 ("Grade 6") Explosives Operator ("EO") Supervisor. [Doc. 73, p. 8, ¶ 6; Doc. 81, p. 7]. Grade 6 Supervisors typically oversee three or more employees performing a single process in a single building. [Doc. 73, p. 8, ¶ 4; Doc. 81, p. 7].

In April 2014, Tommy Buckner[3] assumed the position of Chief of Ammunitions Operations ("AO") at MCAAP. [Doc. 73, p. 8, ¶ 8; Doc. 81, p. 7]. In early-2015, MCAAP's Commanding Officer signed a letter of reprimand and directed Buckner to issue the same to Plaintiff because two employees she supervised had been accused of sexual harassment, resulting in one termination. [Doc. 73. p. 15, ¶ 53; Doc. 73-2, pp. 18-20, 51:3-53:19]. After discussing the situation with Plaintiff, Buckner chose not to issue the reprimand. [Doc. 73, p. 13, ¶ 40; Doc. 73-2, pp. 19-20, 52:17-53:19; Doc. 81, p. 9, ¶ RDF40-41]. In March 2016, Plaintiff filed a non-EEO complaint challenging a purportedly connected "poor supervision" rating issued by her supervisor, Jeremy Harris, and approved by Buckner. [Doc. 73, p. 13, ¶ 41; Doc. 73-2, pp. 21-24, 54:2-57:15]. Harris subsequently changed Plaintiff's rating to "highly successful." [Doc. 73, p. 13, ¶ 41; Doc. 73-2, pp. 22-23, 55:23-56:1].

In late-2016, Plaintiff submitted a statement in support of an EEO age discrimination complaint filed by her 64-year-old co-worker, Billy Cloud. [Doc. 73-2, p. 25, 61:19-22; Doc. 81-13; Doc. 81-19].[4] Plaintiff further claims to have witnessed Buckner tell Cloud that "[it]'s time for you to go home" because "[w]e need new blood in here" [Doc. 81-2, p. 4, 31:3-16]. Buckner encouraged supervisors, including Plaintiff, to focus on training younger employees. [Id. p. 7, 40:10-12]. Finally, Plaintiff claims to have overheard Buckner say that women

---

[3] Tommy Buckner, male, was born in 1971. [Doc. 73-15, p. 2, Q2].

[4] The witness statement submitted by Plaintiff provided as follows: "During a supervisor meeting in the summer of 2016, Tommy Buckner came into the meeting and said, 'Ya'll know we're not spring chickens. SO, when you're making your selection for the permanent [Grade] 5's, don't look at the older hands, look at the younger ones because they're our future." [Doc. 81-13].

"won't make good supervisors" because they are "emotional," "not stern enough," and "need to just be home having babies and taking care of their house." [Id. pp. 8-12, 42:5-46:8]. While Buckner denies making the above remarks, he admittedly has told MCAAP personnel the Army should take younger employees under consideration when selecting candidates for higher-level, permanent promotions. [Doc. 73, p. 13, ¶ 39; Doc. 81-1, pp. 18-19, 86:17-87:21].

On April 13, 2018, Plaintiff applied for the position of WS-6502-09 ("Grade 9") EO Supervisor, which would have been a promotion in terms of job duties, supervisory authority, and pay. [Doc. 73, p. 8, ¶¶ 4-5; Doc. 73-7; Doc. 81, p. 10, ¶ PF2; Doc. 81-6].[5] The MCAAP's human resources office subsequently screened all Grade 9 applicants for minimal qualifications and forwarded a certificate of six eligible candidates to Buckner, which included Plaintiff. [Doc. 73, p. 8, ¶ 13; Doc. 73-7; Doc. 81, p. 7, ¶ RDF13; Doc. 81-8]. Five of the six qualified applicants accepted interviews, each of whom were Grade 6 personnel with similar job backgrounds. [Doc. 73-7; Doc. 73-9, p. 3, Q16]; In accordance with his personal practice and on approval by his superiors, Buckner appointed a three-person panel to interview the applicants, including (1) William Tollett,[6] former Chief of AO and then-acting Chief of the MCAAP's Fire Department; (2) Jackie Paden,[7]

---

[5] The Army posted a job announcement for the Grade 9 vacancy on usajobs.gov on or around April 3, 2018. [Doc. 73-6]. Notably, Grade 9 EO Supervisors typically oversee 150 to 200 employees performing various processes in multiple buildings. [Doc. 73, p. 8, ¶ 5; Doc. 81, p. 7].

[6] William Tollett, male, was born in 1976. [Doc. 73-9, p. 2, Q2].

[7] Jackie Paden, female, was born in 1972. [Doc. 73-10, p. 2. Q2].

Chief of AO Process Control; and (3) Holly Price,[8] Chief of Production Planning. [Doc. 73, p. 9, ¶¶15-16; Doc. 81, p. 7, ¶ RDF15].

In addition, Buckner drafted four questions with corresponding scoring criteria[9] for the panel to use while conducting interviews. [Doc. 73, p. 10, ¶ 17; Doc. 73-12; Doc. 81, p. 7, ¶¶ RDF15, RDF17]. The questions provided as follows:

1. This position requires experience in establishing and maintain effective working relationships with individuals at all levels of management, co-workers and customers. Please describe your experience in maintaining working relationships and supporting a team environment. Include the type of level of personnel in your response.

2. This position requires the ability to communicate orally and in writing. This may take the form of person-to-person contacts or written correspondence. Proper grammar, composition, accuracy, tact and diplomacy are factors in this element. Please relate a situation that shows your experience with oral and written forms of communication you have utilized to present information for decision making purposes. Include the level of personnel involved and whether you prepared or performed the communication independently, assisted with the communication or supported the communication.

3. This job requires that the Supervisor use technology and basic computer-generated spreadsheets [and] programs daily. Briefly describe your experience in using these tools.

4. What has been you greatest work-related accomplishment and how could you see applying similar efforts to obtain similar great results for the Ammunition Operations team?

[Doc. 73-12]. The panel used the corresponding grading criteria to independently score each candidate. [Doc. 73, p. 10, ¶ 20; Doc. 73-11, p. 4, ¶27; Doc. 81, p. 8,

---

[8] Holly Price, female, was born in 1982. [Doc. 73-11, p. 2, Q2].

[9] Candidates could earn five, ten, or fifteen points per question depending upon their interview performance and the extent of pertinent information provided to the panel. [Doc. 73-12].

¶ RDF24-25]. Each panelist independently gave Scott Harkey[10] the highest interview score, and Plaintiff received the lowest interview score from each panelist. [Doc. 73-8].

After completing the interview process, Paden and Price separately forwarded their scores to Tollett who, after combining the same with his scores, recommended that Harkey be selected for the Grade 9 promotion. [Doc. 73-9, p. 4, Q24; Doc. 73-10, p. 4, Q25; Doc. 73-11, p. 3, Q15]. The panelists made such recommendation for the following reasons: (1) Tollett believed Harkey did the best job responding to the questions, while Plaintiff "came across like she didn't care if she acquired the position or not" [Doc. 73-9, p. 4, Q30-31]; (2) Paden believed Plaintiff failed to provide answers with the level of knowledge that Harkey demonstrated in his interview [Doc. 73-10, p. 4, Q25-32]; and (3) Price believed Plaintiff "did not answer the questions as thoroughly" as Harkey. [Doc. 73-11, p. 4, Q31-33]. As the selecting official, Buckner followed the panel's unanimous recommendation that Harkey be selected for the Grade 9 position. [Doc. 73, pp. 10-11, ¶¶ 23-25; Doc. 81, p. 11, ¶ PF6].

Plaintiff was notified of her non-selection on June 11, 2018. [Doc. 73, p. 11, ¶ 26; Doc. 81, p. 11, ¶ PF5; Doc. 81-10]. On July 10, 2018, she contacted an EEO counselor to lodge a complaint regarding her non-selection and completed an intake questionnaire. [Doc. 73, p. 15, ¶ 52; Doc. 73-13]. The July 10 intake designated "age," "sex," and "reprisal" as the bases for the alleged discrimination.

---

[10] Scott Harkey, male, was born in or around 1981. [Doc. 81-9, p. 3]. He began working at MCAAP in April 2004 and was promoted to Grade 6 EO Supervisor in July 2014. [Doc. 73-18, p. 2, ¶ 2].

[Doc. 73-13, p. 3, § IV]. Specifically, Plaintiff alleged she "was discriminated against due to her age (59), [s]ex (female), and retaliation when a younger employee, Mr. Scott Harkey, who appears to be in his mid-30s and male was selected for a position" over Plaintiff "due to retaliation from the past in regards to [a] night shift change in May/June 2015" and a subsequent "administrative grievance" filed by Plaintiff. *See generally* [Doc. 73-13].

On August 2, 2018, Plaintiff was notified of her right to file a formal complaint of discrimination with the EEO office [Doc. 81-15], and she did so the following day. [Doc. 81-16]. Like the July 10 intake, the August 3 charge designated "age," "sex," and "reprisal" as a basis for the alleged discrimination. [Doc. 81-16, p. 1, § 9]. Unlike the July 10 intake, the August 3 charge set forth different factual allegations with respect to Plaintiff's retaliation claim: "I believe I was not selected because of my gender (female), age (over the age of forty), and/or in reprisal because I was a witness and gave a statement in support of Billy Cloud as part of his claim of age discrimination against the Agency." [Doc. 81-16, p. 1, § 10].

On August 7, 2018, the EEO office notified Plaintiff of its decision to open an investigation into her formal discrimination complaint. [Doc. 81-17]. Before a final decision was issued, Plaintiff filed this case on December 30, 2019. [Doc. 2]. She subsequently notified the EEO office of her withdrawal from the investigative hearing. [Doc. 86-5, p. 3]. An "Order of Withdrawal" was issued by an EEO administrative judge on January 13, 2020, returning the matter to the EEO office for final action. [Doc. 86-5, p. 3]. On February 24, 2020, a "Final

Agency Decision" was issued, dismissing Plaintiff's EEO complaint pursuant to 29 C.F.R. § 1614.107(a)(3).[11] *See generally* [Doc. 86-5].

## II.   SUMMARY JUDGMENT STANDARD

Pursuant to Fed. R. Civ. P. 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A fact is "material" if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. "Factual disputes that are irrelevant or unnecessary will not be counted." Id. Further, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

However, "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249. A court must examine the factual record in light most favorable to the party opposing summary judgment. Wolf v. Prudential Ins. Co. of Am., 50 F.3d 793, 796 (10th Cir. 1995). Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

---

[11] Prior to a request for an administrative hearing, the agency's EEO office "shall dismiss an entire complaint . . . [t]hat is the basis of a pending action in a United States District Court in which the complainant is a party provided that at least 180 days have passed since the filing of the administrative complaint[.]" Id.

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Id. (*quoting* Fed. R. Civ. P. 56(c)).

## III. ANALYSIS

The court first considers Defendant's request for summary judgment as to Plaintiff's ADEA retaliation claim based on failure to exhaust administrative remedies. The court then considers the merits of Plaintiff's ADEA retaliation claim, ADEA age discrimination claim, and Title VII gender discrimination claim, respectively.

### A.   Exhaustion of Administrative Remedies

Federal employees, like Plaintiff, "who believe they have been discriminated against on the basis of race, color, religion, sex, national origin, age, disability, or genetic information must consult a Counselor" at their respective agency's EEO office "within 45 days of the date of the matter alleged to be discriminatory[.]" 29 C.F.R. § 1614.105(a)-(a)(1). Thus, prior to initiation of any ADEA or Title VII action, "an individual must file a charge with the EEO so that the agency can attempt to eliminate the alleged unlawful practice through informal methods." Shikles v. Sprint/United Mgmt. Co., 426 F.3d 1304, 1308 (10th Cir. 2005), *abrogated on other grounds by* Lincoln v. BNSF Ry. Co., 900 F.3d 1166, 1185 (10th Cir. 2018).[12] If the matter is not informally resolved within

---

[12] Because the ADEA includes "virtually identical" charge filing requirements to Title VII, the court construes the ADEA and Title VII requirements consistently and may look to cases interpreting Title VII to determine the ADEA exhaustion issue in this case. Shikles, 426 F.3d at 1309 (*quoting* Foster v. Ruhrpumpen, Inc., 365 F.3d 1191, 1194 n.1 (10th Cir. 2004)).

30 days of this initial contact, the complainant may file a formal complaint within 15 days following receipt of notice of her right to do so. 29 C.F.R. § 1614.106(d); *see* Lincoln, 900 F.3d at 1185 (holding a failure to exhaust administrative remedies before bringing a Title VII or ADEA action "merely permits the employer to raise an affirmative defense of failure to exhaust but does not bar a federal court from assuming jurisdiction over a claim.").[13]

Further, "a discrimination claim does not accrue when the plaintiff feels the full effects of the discrimination, but when the discrete act occurs." Davidson v. Am. Online, Inc., 337 F.3d 1179, 1188 (10th Cir. 2003); Hulsey v. Kmart, Inc., 43 F.3d 555, 558-59 (10th Cir. 1994) ("[I]t is knowledge of the adverse employment decision itself that triggers the running of the statute of limitations."). "Discrete acts of discrimination" include, without limitation, "termination, failure to promote, a denial of transfer, or a refusal to hire." Davidson, 337 F.3d at 1184 (*citing* Nat'l R.R. Passenger Corp. v. Morgan, ["Morgan"] 536 U.S. 101, 114 (2002)). "[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." Morgan, 536 U.S. at 113.[14]

---

[13] Defendant points to Tenth Circuit precedent providing that a plaintiff's failure to exhaust acts as a jurisdictional prerequisite to suit. However, in 2018, the Tenth Circuit explicitly chose to "bring [such] precedent in line with the overwhelming majority of [] sibling circuits" of which "have stated that a plaintiff's failure to exhaust administrative remedies . . . does not deprive a federal court jurisdiction over a claim." Lincoln, 900 F.3d at 1185 n. 10. The precedent upon which Defendant relies predates the Tenth Circuit's decision in *Lincoln*.

[14] This principle is inapplicable to hostile work environment claims. Morgan, 536 U.S. at 115. Plaintiff does not assert a hostile work environment claim in this case, however.

It is undisputed that, on July 10, 2018, Plaintiff timely contacted an EEO counselor and completed an intake questionnaire. The July 10 intake purported to arise from a single discrete act occurring on June 11, 2018 – *i.e.,* the day Plaintiff was notified of her non-selection – and asserted discrimination based on gender and age, as well as retaliation premised on allegations related to an "administrative grievance" Plaintiff submitted in "May/June 2015" against a subordinate who had been accused of sexual harassment. [Doc 73-13, p. 3, § IV; Doc. 81-3, p. 1, Q4]. It is also undisputed that Plaintiff received notice of her right to file a formal complaint on August 2, 2018, and timely filed the same on the following day. While the August 3 charge also arose from Plaintiff's non-selection and reiterated claims of gender, age and retaliatory discrimination, the latter claim was premised on different factual allegations related to Plaintiff's participation as a witness in Billy Cloud's age discrimination EEO complaint against Buckner. [Doc. 73-14, p. 2, § 10]. Nevertheless, the Army's EEO office issued a letter on August 7, 2018, accepting Plaintiff's August 3 charge for investigation.

Defendant argues that Plaintiff's failure to specifically allege any facts related to her district court ADEA retaliation claim until August 3, 2018 – 53 days after notice of her non-selection – time bars this claim for failure to exhaust. Without considering the inconsistent factual allegations underlying her EEO retaliation claim, both the July 10 intake and August 3 charge were timely and set forth claims of discrimination based on "age," "gender" and "reprisal." The Army's EEO office received Plaintiff's formal complaint 25 days following receipt

of her July 10 intake and chose to open an investigation on the August 3 charge. This investigation began on August 7, 2018, and ended upon Plaintiff's receipt of a "right-to-sue-letter" on or around February 24, 2020. *See* Sanderson v. Wyo. Highway Patrol, 976 F.3d 1164, 1170 (10th Cir. 2020) ("A plaintiff normally may not bring a Title VII [or ADEA] action based on claims that were not part of a timely-filed EOO[] charge for which the plaintiff has received a right-to-sue-letter.").

This exhaustion requirement serves "two principal purposes: 1) to give notice of the alleged violation of the charged party; and 2) to give the EEOC an opportunity to conciliate the claim[.]" Id.   To advance these purposes, "a plaintiff's claim is generally limited by the scope of the *administrative investigation* that can reasonably be expected to follow the *charge of discrimination* submitted to the EEOC." Id. (emphasis added). Here, Plaintiff's district court ADEA retaliation claim falls within the scope of the administrative investigation conducted by the Army's EEO office. Although Defendant is correct that the retaliation allegations in Plaintiff's August 3 charge are legally and factually distinct from those asserted in her July 10 intake, the EEO office did not open an investigation into the intake questionnaire. Rather, it investigated the claims and allegations asserted in Plaintiff's August 3 charge.

The Army had sufficient notice of the ADEA retaliation claim asserted in Plaintiff's formal complaint and its EEO office had ample opportunity to conciliate such claim, as the August 3 charge was under investigation for over 500 days. It would be contrary to the principal purposes of administrative

16

exhaustion to bar a plaintiff from pursuing a timely filed retaliation claim that was wholly within the scope of an EEO investigation. The court finds that Plaintiff exhausted her administrative remedies. Defendant is not entitled to judgment as a matter of law on Plaintiff's ADEA retaliation claim for failure to exhaust.

### B.   Merits of the ADEA Retaliation Claim

The ADEA prohibits an employer from discriminating against an employee because she "has opposed any practice made an unlawful employment practice." 29 U.S.C. § 623(d). Because both parties agree that Plaintiff lacks direct evidence of retaliation, the *McDonnell Douglas* burden shifting framework applies. *See* Hinds v. Sprint/United Mgmt. Co., 523 F.3d 1187, 1201-02 (10th Cir. 2008) (applying *McDonnell Douglas* framework to ADEA retaliation claim); *see also* St. Mary's Honor Ctr. v. Hicks, ["Hicks"], 509 U.S. 502, 507 (1993) ("[A]lthough the *McDonnell Douglas* presumption shifts the burden of *production* to the defendant, the ultimate burden of persuas[ion] . . . remains at all times with the plaintiff.") (citation and internal quotations omitted) (emphasis in original).

Under the first *McDonnell Douglas* step, Plaintiff must establish a prima facie case of retaliation by a preponderance of the evidence by showing that (1) she engaged in protected opposition to discrimination, (2) a reasonable employee would have considered the challenged employment action materially adverse, and (3) a causal connection existed between the protected activity and the materially adverse action. Hinds, 523 F.3d at 1202 (*citing* Montes v. Vail Clinic, Inc., 497 F.3d 1160, 1176 (10th Cir. 2007)). It is undisputed that Plaintiff engaged in a "protected activity" by submitting a witness statement in support

of Cloud's EEO complaint and, as noted, Plaintiff's receipt of the non-selection notice constitutes an "adverse employment action."

As for the third prima facie element, Plaintiff must show her non-selection was motivated by Buckner's desire to retaliate for her protected activity. Hinds, 523 F.3d at 1203 (citing Wells v. Colo. Dep't of Transp., 325 F.3d 1205, 1218 (10th Cir. 2003)). As a prerequisite to this showing, Plaintiff must first offer evidence from which a reasonable factfinder could conclude that those who decided not to promote her had knowledge of her protected activity. Id. (citing Montes, 497 F.3d at 1176) ("To satisfy [the causal connection] element, a plaintiff must show that the individual who took adverse action against [her] knew of the employee's protected activity."). It is undisputed that Buckner was the "selecting official" for the promotion at issue, and Plaintiff has presented circumstantial evidence that Buckner spoke with others about her protected activity sometime prior to her non-selection. See [Doc. 81-3, p. 4, Q36]. The court views this evidence in the light most favorable to Plaintiff and draws all reasonable inferences in her favor. See Smothers, 740 F.3d at 538.

To be sure, the court may infer retaliatory motive from a close temporal proximity between an employee's protected conduct and an employer's adverse employment action. See O'Neal v. Ferguson Constr. Co., 237 F.3d 1248, 1253 (10th Cir. 2001) ("A causal connection may be shown by evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action."). But unless the non-selection is very close in time to the protected activity, Plaintiff cannot solely rely on temporal

proximity and must present additional evidence to establish causation. *See* id. ("Standing alone, temporal proximity between the protected activity and the retaliatory conduct must be very close in time."). More specifically, the Tenth Circuit has held that a one-and-a-half-month period may establish causation on a prima facie basis, but a three-month period, standing alone, will not suffice. Hinds, 523 F.3d at 1204 (citation omitted); *accord* Meiners v. Univ. of Kan., 359 F.3d 1222, 1231 (10th Cir. 2004); *see also* Haynes, 456 F.3d at 1228 (holding seven-month period between protected activity and adverse action will not establish causation).

As Plaintiff's non-selection occurred eighteen months after she submitted her statement in support of Cloud's EEO complaint, the time span between her protected activity and non-selection is too extended to infer retaliatory motive under Tenth Circuit precedent. In attempts to escape this conclusion, Plaintiff appears to argue that temporal proximity is sufficient for two alternative reasons. First, she contends it "made sense" for Buckner to wait over eighteen months to retaliate. This argument is speculative, at best, and the two cases Plaintiff offers in support contain facts that are simply not present in this case.[15] Alternatively, Plaintiff argues that Buckner's "anger and resentment was revived" when Cloud filed an age discrimination suit in September 2017. Even viewing this evidence

---

[15] *See* [Doc. 81, pp. 18-19] (*citing* Wells, 325 F.3d at 1217) (plaintiff established causation through temporal proximity by showing she was on leave during the five-month period between her protected activity and adverse employment action); Klassen v. Deer Trail Sch. Dist. 26J, 18-cv-2004-JLK, 2021 U.S. Dist. LEXIS 62276, at *8-9 (D. Colo. 2021) (plaintiff established temporal proximity by showing retaliation was delayed by restrictions of the school year and administrative meeting calendar). In contrast, Plaintiff does not allege that she and/or Buckner took any leave from their duties at MCAAP during the eighteen-month period in question.

in the light most favorable to Plaintiff, the nine-month period between Buckner's "revived" resentment and her non-selection remains attenuated, undermining any inference of retaliatory motive.

The court is not persuaded that a reasonable jury could find a non-speculative link between Buckner's alleged lingering retaliatory animus and Plaintiff's non-selection. Pursuant to Plaintiff's failure to establish the prima facie element of causation by a preponderance of the evidence, there is no need for the court to continue the *McDonnell Douglas* analysis. Defendant is, therefore, entitled to judgment as a matter of law on Plaintiff's ADEA retaliation claim.

### C.   Merits of Discrimination Claims under Title VII and the ADEA

The ADEA provides relief for acts of intentional discrimination on age in employment. 29 U.S.C. § 623. Using parallel language, the federal-sector provisions of Title VII provide that "[a]ll personnel actions affecting employees or applicants for employment . . . shall be made free from any discrimination based on race, color, religion, sex, or national origin." 42 U.S.C.S. § 2000e-16. "Under both Title VII and the ADEA, a plaintiff retains the burden of proving her employer intentionally discriminated against her." Bennett v. Windstream Comm'ns, Inc., 792 F.3d 1261, 1266 (10th Cir. 2015) (*citing* Riser v. QEP Energy, 776 F.3d 1191, 1191 (10th Cir. 2015)).

### 1.   *But-For Causation Standard*

Before analyzing the merits of Plaintiff's remaining claims, the court must resolve the parties dispute over the relevant causation standard. Relying on Babb v. Wilkie, 140 S. Ct. 1168 (2020), Plaintiff broadly claims a lesser causation

standard applies to both Title VII and ADEA claims brought by federal employees. In *Babb*, the Supreme Court analyzed the part of § 633a requiring that all personnel decisions regarding federal employees "shall be made free from any discrimination based on age." Id. at 1172 (*quoting* 29 U.S.C. § 633a(a)). Contrary to Plaintiff's argument, the Supreme Court emphasized that "under § 633a(a), age must be the but-for cause of *differential treatment*." Id. at 1174 (emphasis in original). Accordingly, "§633a(a) plaintiffs who demonstrate only that they were subjected to unequal consideration cannot obtain reinstatement, backpay, compensatory damages, or other forms of relief related to the end result of an employment decision." Id. Any plaintiff seeking such remedies "must show that age discrimination was a but-for cause of the employment outcomes." Id. at 1177-78.[16] In this case, each remedy requested by Plaintiff relates to the "end result" of Defendant's decision not to promote Plaintiff. Thus, Plaintiff must prove but-for causation to prevail on her claims for relief.

### 2. *McDonnell Douglas Analysis*

The parties agree the *McDonnell Douglas* three-part burden shifting framework applies because Plaintiff lacks direct evidence of discrimination. *See* Reeves, 530 U.S. at 142 (applying *McDonnell Douglas* to ADEA claim "[b]ecause the parties do not dispute the issue"); *see also* Bennett, 792 F.3d at 1266-67 (applying *McDonnell Douglas* analysis to ADEA and Title VII claims); EEOC v.

---

[16] In her *Babb* concurrence, Justice Sotomayor speculated that additional, lesser remedies might be available to a plaintiff who fails to prove but-for causation, such as out-of-pocket expenses. *See* id. at 1178-79. (Sotomayor, J., concurring). However, Plaintiff has failed to cite any caselaw where a court accepted Justice Sotomayor's offer to create additional remedies for a plaintiff unable to show but-for causation.

Horizon/CMS Healthcare Corp., 220 F.3d 1184, 1191-92 (10th Cir. 2000) (applying *McDonnell Douglas* framework to Title VII claims).

### a.    *Plaintiff's Prima Facie Cases*

To establish a prima facie case of discrimination based on gender or age, a plaintiff must show by a preponderance of the evidence that (1) she is a member of a protected class, (2) she suffered an adverse employment action, (3) she is qualified for the position at issue, and (4) the challenged action occurred under circumstances giving rise to an inference of discrimination. Bennett, 792 F.3d at 1266 (prima facie elements for Title VII and ADEA claims).[17] While the elements of a prima facie case "are neither rigid nor mechanistic, their purpose is the establishment of an initial inference of unlawful discrimination warranting a presumption of liability in plaintiff's favor." Adamson Multi Cmty. Diversified Servs., Inc., 514 F.3d 1136, 1146 (10th Cir. 2008); *accord* Waters, 438 U.S. at 576. Here, Plaintiff has established a prima facie case of discrimination under both Title VII and the ADEA on her failure to promote theory.[18]

---

[17] The Supreme Court has noted the elements required for a prima facie case of discrimination may vary depending on the context of the claim and the nature of the alleged conduct. McDonnell Douglas, 511 U.S. at 802 n.13; *accord* Young v. United Parcel Serv., Inc., 575 U.S. 206, 228-29 (2015); Furnco Constr. Corp. v. Waters, ["Waters"] 438 U.S. 567, 575 (1978). The Tenth Circuit has utilized many similar versions of the test, expressing a preference for more concise formulations. *See e.g.*, Tabor v. Hilti, Inc., 703 F.3d 1206, 1216 (10th Cir. 2013) (including proof of job qualifications as a prima facie element under the *McDonnell Douglas* framework); Sorbo v. United Parcel Serv., 432 F.3d 1169, 1173 (10th Cir. 2005).

[18] Plaintiff is presumably qualified for the Grade 9 position pursuant to the undisputed fact that MCAAP's human resources department, in narrowing the applicant pool, included Plaintiff as one of six eligible job candidates. The fourth element is established by the undisputed "proof that the employer hired or promoted someone outside of [] [Plaintiff's] protected class." Hamilton v. Okla. City Univ., 563 F. App'x 597, 608 (10th Cir. 2014).

b.   *Defendant's Legitimate, Nondiscriminatory Reason*

To rebut the presumption of discrimination established by Plaintiff, the second *McDonnell Douglas* step requires that Defendant articulate "a legitimate, nondiscriminatory reason" for the adverse employment action. Bennett, 792 F.3d at 1266 (*citing* Adamson, 514 F.3d at 1145); *see also* Hicks, 509 U.S. at 507-08 ("If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted and drops from the case.") (citation omitted); Williams v. FedEx Corp. Servs., 849 F.3d 889, 889-900 (10th Cir. 2017) (At the second *McDonnell Douglas* stage, the defendant's burden is "exceedingly light"). Defendant-employers are required only to provide "admissible evidence" of a "legally sufficient" explanation for the adverse action that raises a genuine issue of material fact "as to whether [the defendant] discriminated against the plaintiff." Texas Dep't of Comm. Affairs v. Burdine, 450 U.S. 248, 254-55 (1981). But "[t]his burden is one of production, not persuasion; it 'can involve no credibility assessment.'" Reeves, 530 U.S. at 142 (*quoting* Hicks, 509 U.S. at 510).

Here, the parties do not dispute that Defendant has proffered evidence showing a legitimate, nondiscriminatory reason for not promoting Plaintiff to the Grade 9 level. Defendant has offered uncontroverted evidence that the three-person interview panel recommended Harkey for the Grade 9 vacancy based on the quality of his interview performance; accordingly, Buckner selected Harkey for the position. *See* Gorney v. Salazar, 413 F. App'x 103, 109 (10th Cir. 2011) ("Selecting a candidate based on the quality of their interview performance is a

23

legitimate nondiscriminatory reason for hiring an applicant."); *see also* Turner v. Public Serv. Co. of Colo., 563 F.3d 1136, 1143 (10th Cir. 2009) (finding a plaintiff's low ranking among other interviewees was a legitimate, nondiscriminatory reason for non-selection). This is sufficient to shift the burden back to Plaintiff to show pretext.

*c.*   *Pretext*

To satisfy the final *McDonnell Douglas* step and overcome summary judgment, Plaintiff must present evidence to establish a genuine issue of material fact as to whether Defendant's articulated reason for the adverse employment action was pretextual. Tabor v. Hilti, Inc., 703 F.3d 1206, 1218 (10th Cir. 2013); *see* Miller v. Eby Realty Group, LLC, 396 F.3d 1105, 1111 (10th Cir. 2005) ("Pretext exists when an employer does not honestly represent its reasons for [the adverse action]."). In the present case, pretext may be established in either of two ways: "(1) by showing that the proffered reason is factually false or (2) by showing that discrimination was a primary factor in the employer's decision, which is often accomplished by revealing 'weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the [explanation] . . . that a reasonable factfinder could rationally find [it] unworthy of credence and hence infer that [a defendant] did not act for the asserted nondiscriminatory reasons.'" Tabor, 703 F.3d at 1218 (*quoting* Garrett v. Hewlett-Packard Co., 305 F.3d 1210, 1217 (10th Cir. 2002)).

With respect to falsity of a defendant's rationale for the adverse action, to determine whether the stated reason was pretextual, the court must "look at the

24

facts as they appear to the person making the decision." Simmons v. Sykes Enters., Inc., 647 F.3d 943, 948 (10th Cir. 2011) (*quoting* Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1231 (10th Cir. 2000)); *see also* DeWitt v. Sw. Bell Tel. Co., 845 F.3d 1299, 1307 (10th Cir. 2017) (The court's "role is to prevent intentional discriminatory . . . practices, not to act as a 'super personnel department,' second guessing employers' honestly held (even if erroneous) business judgments."). The defendant's good faith "perception of the employee's performance . . . is relevant, not plaintiff's subjective evaluation of [her] own relative performance.'" Piercy v. Maketa, 480 F.3d 1192, 1200-01 (10th Cir. 2007) (citation omitted). The determinative question is whether "a reasonable factfinder could rationally find [the employer's rationale] unworthy of credence and hence infer that the employer did not act for the asserted nondiscriminatory reasons." Crowe v. ADT Sec. Servs., Inc., 649 F.3d 1189, 1196 (10th Cir. 2011).

**First**, Plaintiff offers numerous age- and gender-related comments made by Buckner as circumstantial evidence of discrimination. *See* Johnson v. Weld County, Colo., 594 F.3d 1202, 1202-13 (10th Cir. 2010) ("Remarks or actions which reflect bias may also be considered evidence of pretext."). The following statements were purportedly made by Buckner prior to 2018: younger employees should be promoted to permanent MCAAP positions, supervisors should focus on training younger employees, the Army needs "new blood," and women are not good supervisors because of their emotional nature and homemaking responsibilities. Of course, "[r]emarks at work that are based on sex stereotypes do not inevitably prove that gender played a part in a particular employment

decision." <u>Price Waterhouse v. Hopkins</u>, 490 U.S. 228, 251 (1989), *abrogated on other grounds by* <u>Landgraf v. USI Film Prods.</u>, 511 U.S. 244 (1994); <u>Ramsey v. Denver</u>, 907 F.2d 1004, 1008 (10th Cir. 1990) (a plaintiff "must show that the employer actually relied on her gender in making its decision"). Similarly, "[a]ge-related comments referring directly to the worker may support an inference of age discrimination" but "isolated [or] ambiguous comments are too abstract . . . to support a finding of age discrimination." <u>Cone v. Longmont United Hosp. Ass'n</u>, 14 F.3d 526, 531 (10th Cir. 1994.

 While the court agrees that Buckner's age- and gender-related comments reveal discriminatory views when taken as true, Plaintiff fails to demonstrate how these remarks played a part in her non-selection. *See* <u>Plotke v. White</u>, 405 F.3d 1092, 1107 (10th Cir. 2005) (noting that, at the pretext stage, the plaintiff "simply must show a nexus between the allegedly discriminatory statements and the employer's decision."). Plaintiff does not allege that Buckner directed any of these comments toward her or her position. *See* <u>Salazar v. City of Commerce City</u>, 535 F. App'x 692, 697 (10th Cir. 2013) (finding the plaintiff must show comments were directed at her or her position, or that there is a connection between the comments and the adverse action) (*citing* <u>Johnson</u>, 594 F.3d at 1212-13). Plaintiff also makes no attempt to justify the attenuation in time between Buckner's comments and her non-selection. *See* <u>Cone</u>, 14 F.3d at 531 ("Isolated comments, unrelated to the challenged action, are insufficient to show discriminatory animus[.]") (citations omitted). However, there is evidence that Buckner, while not ultimately responsible for Plaintiff's non-selection, held

26

influence and authority over the promotion process. *See* id. ("[A]ge-related comments by non-decisionmakers are not material in showing" pretext). Thus, while Buckner's comments alone are insufficient to show discrimination was a primary factor in Plaintiff's non-selection, they are probative of that fact.

**Second**, Plaintiff argues the first and third interview questions generated by Buckner were wholly comprised of subjective criteria. To start, "a plaintiff cannot prove that [she] was discriminated against simply because an employment decision was based on subjective criteria." Cortez v. Wal-Mart Stores, Inc., 460 F.3d 1268, 1275 (10th Cir. 2006). Indeed, "[courts] have long respected employers' wide latitude in setting job standards and requirements and in deciding whether applicants meet those standards." Id. (*quoting* Hickman v. Flood & Peterson Ins., Inc., 766 F.2d 422, 425 (10th Cir. 1985)). This is not to say that the use of subjective hiring criteria cannot be evidence of pretext. It can be. *See* Santana v. City & Cnty. of Denver, 488 F.3d 860, 866 (10th Cir. 2007) ("[E]vidence of pretext may include the use of subjective criteria."). But "a plaintiff cannot prove that she was discriminated against simply because an employment decision was based on subjective criteria" because "some subjectivity is to be expected in every hiring decision." Ford v. Jackson Nat'l Life Ins. Co., 45 F.4th 1202, 1218 (10th Cir. 2022).

Here, the criteria that the panel used to rate Grade 9 interviewees were not excessively subjective for several reasons. To start, each applicant answered the same questions, and the interviewers ranked the applicants' responses using predetermined criteria. *See* Santana, 488 F.3d at 866 (finding that thought the

interview process at issue was subjective, it was not discriminatory in party because "[t]he panelists asked every applicant the same three questions and then ranked the candidates based on their responses): *see also* <u>Bauer v. Bailar</u>, 647 F.2d 1037, 1043 (10th Cir. 1981) ("the standards from which the selection committee made a choice were written down and in that sense were objective.").

Next, the fact that the interview panel consisted of two women and one man – two of whom were over the age of 40 – further enervates Plaintiff's pretext argument. She proffers no evidence that any of the interviewers held discriminatory attitudes or participated in past discrimination and concedes that she received the lowest interview score from each panelist. Plaintiff consequently confirms the interviewers' assessments – which placed her last among all Grade 9 candidates – and further undermines her claim that she was not promoted for discriminatory reasons. *See* <u>Santana</u>, 488 F.3d at 866 ("The interviewees thought, and [the plaintiff] agreed, that she did not present herself as a strong candidate."). Of course, Plaintiff asserts that Buckner, as the ultimate selecting official for the Grade 9 vacancy, allowed his alleged discriminatory animus to infect the promotion process. But the fact that Buckner followed the panel's unanimous recommendation that Harkey be promoted undermines any remaining probative value his position of influence and discriminatory statements may carry as evidence of pretext.

Finally, Plaintiff does not contend that the second and fourth interview questions constituted subjective criteria. This argument is, thus, insufficient to show pretext because courts may infer pretext "only when the criteria on which

the employers ultimately rely are *entirely subjective* in nature." Turner, 563 F.3d at 1145 (*quoting* Jones v. Barnhart, 349 F.3d 1260, 1267-68 (10th Cir. 2003)) (emphasis added). Even so, the interview questions that Plaintiff does challenge are not "wholly subjective." Although Plaintiff claims the first question subjectively inquired into client relation experience, this question predominately sought information regarding candidates' leadership and communication skills. *See* Ford, 45 F.4th at 1219 (finding that "subjective considerations" such as "team building" and "personal leadership" do not render the process "wholly subjective"). As for the third interview question, Plaintiff contends it favored younger employees, like Harkey, who are more likely to be familiar with technology. However, the Grade 9 job announcement includes proficiency with various management systems as a job responsibility [Doc. 73-6, p. 3], and Plaintiff was admittedly aware of an increasing expectation that MCAAP supervisors be technologically competent. *See* [Doc. 73-2, p. 39, 99:5-21].

In sum, the criteria in the Grade 9 interview process, even when combined with evidence of Buckner's indirect and isolated remarks, does not present a triable issue as to whether Defendant's proffered reason for Plaintiff's non-selection was pretextual for discrimination based on age and gender. Therefore, Defendant is entitled to judgment as a matter of law on Plaintiff's discrimination claims under Title VII and the ADEA.

## IV.  CONCLUSION

WHEREFORE, the Motion for Summary Judgment filed by Defendant Christine Wormuth, Secretary of the U.S. Department of the Army [Doc. 73], is hereby **GRANTED**.

IT IS SO ORDERED this 29th day of January, 2024.

_____
JASON A. ROBERTSON
UNITED STATES MAGISTRATE JUDGE